UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN J. STONE and        :
ELLEN A. STONE,
                          :   CIVIL ACTION NO. 3:15-1632
    Plaintiffs
                          :        (JUDGE MANNION)
    v.
                          :
TODD A. MARTIN and
JASON DUNLAP,             :

    Defendants            :

## MEMORANDUM

Pending before the court is the defendants' motion for summary judgment. (Doc. 16). Based upon the court's review of the motion and related materials, the defendants' motion will be granted with respect to the plaintiffs' Fourth Amendment claim and the plaintiffs' remaining state law claims will be dismissed without prejudice.

By way of relevant procedural background, the plaintiffs filed the instant action on August 24, 2015, in which they set forth a claim pursuant to 42 U.S.C. §1983, as well as various state law claims. (Doc. 1). On June 30, 2016, the defendants filed the instant motion for summary judgment, (Doc. 16), along with a statement of material facts, (Doc. 17), and supporting brief, (Doc. 18). The plaintiffs filed a responsive statement of material facts, (Doc. 19), and opposing brief, (Doc. 20), on July 13, 2016.

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial

2

burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

In their complaint, the plaintiffs allege that, on June 17, 2015, defendant Dunlap, a deputy sheriff in Monroe County, entered onto their property to serve a small claims notice from the State of Rhode Island. At the time of entry, the plaintiffs allege that their home and property were posted with signs that prohibited persons from entering or trespassing upon the property. Moreover, the plaintiffs allege that the driveway on the property had a gate that was closed and locked. The plaintiffs allege that defendant Dunlap disregarded the signs and circumvented the locked gate in order to enter onto the property and reach the plaintiffs' home and garage which are not visible from the adjoining street.

Based upon the above allegations, the plaintiffs assert a claim pursuant

to 42 U.S.C. §1983, a claim for a violation of the Pennsylvania Constitution, and state law claims for invasion of privacy and trespass. The plaintiffs are seeking declaratory and injunctive relief, as well as compensatory and punitive damages.

In support of their motion for summary judgment, the defendants have submitted a statement of material facts, the following of which are not in dispute. The plaintiff, Brian Stone, is a licensed Pennsylvania attorney with offices in New York and Pennsylvania.[1] The plaintiff, Ellen Stone, is Brian Stone's wife. Todd Martin is the elected Sheriff of Monroe County and Jason Dunlap is a Monroe County Sheriff's deputy.

The Stones own a property along Route 115[2] in Tobyhanna Township, Monroe County, Pennsylvania, which is comprised of approximately 75 acres. The Stones' home and Brian Stone's Pennsylvania law office are adjacent to each other on the property and are both accessed by a shared driveway running from Route 115. At the Route 115 entrance to the property, Mr. Stone erected a sign advertising to the public that the property is the site of his law office and included his phone number on the sign.

---

[1]Pursuant to L.R. 56.1, where the plaintiffs have failed to respond to a statement of fact provided by the defendants which is supported by the record, that fact will be deemed admitted.

[2]The plaintiffs correctly note that, despite the representation in the defendants' statement of material facts, the documents provided in support of the defendants' motion for summary judgment confirm that the plaintiffs' property is located adjacent to Route 115, not Route 611.

At the entrance to the plaintiffs' driveway is a gate. Along the driveway leading to the plaintiffs' home and Mr. Stone's law office were placed signs reading "Beware of Dog", "No Hunting", "Speed Limit 15", "Posted - Private Property - Hunting, Fishing, Trapping or Trespassing for Any Purpose is Strictly Forbidden - Violators will be Prosecuted", and "Keep Out". These signs are posted even when Mr. Stone's law office is open for business.

The Monroe County Sheriff's Office was asked by Latese T. Smith, the plaintiff in a Rhode Island lawsuit against Mrs. Stone, to serve documents upon Mrs. Stone relating to the lawsuit. On two occasions on June 8, 2015 and June 11, 2015, defendant Dunlap went to the plaintiffs' property to serve the civil process and found the gate at the plaintiffs' driveway locked. On those occasions, defendant Dunlap placed his card in the plaintiffs' mailbox and left the property. On June 17, 2015, the day at issue in this case, defendant Dunlap returned to the plaintiffs' property. At that time, the gate at the end of the driveway was once again closed and locked. This time, defendant Dunlap proceeded to walk around the gate and down the Stones' driveway. When he reached the law office building, the garage door in the building was open and Ellen Stone was visible from the open door. Defendant Dunlap indicated that he was looking for Ellen Stone at which time she replied "You found me." Defendant Dunlap gave the Rhode Island paperwork to Mrs. Stone at her husband's law office and then left the property. A sign on the door of the law office reflects that the building houses Mr. Stone's law office

and provides a contact phone number and website address.[3]

The plaintiffs allege that defendant Dunlap was acting "in conformity with the policy of the (sic) defendant Martin . . . and under color of the statutes, regulations, customs, and usages of defendant Martin", and that the "[d]efendants affirmatively assert and claim that [they] have a right to disregard posted signs and to go around locked gates in connection with serving civil process, no matter how trivial the matter, . . ." (Doc. 1, p. 2).

The plaintiffs have provided their own counterstatement of material facts to which the defendants have not responded.[4] To the extent that those facts are supported by the record, they demonstrate that a majority of the property in question is covered by dense woods which blocks the view of the home and nearby garage from the public road. At the time that defendant Dunlap entered the property, he was not able to see the Mr. Stone's law office from the public roadway. The plaintiffs' materials demonstrate that there is a

---

[3]Although providing no documentation to the contrary, the plaintiffs affirmatively dispute that a sign above the window on the door existed at the time of the incident at question. In response to the defendants' photograph depicting the information on the window of the door, the plaintiffs provide only that "there *may not* have been a sign in that window on the date of the incident." (Doc. 19, ¶5) (emphasis added). Again, the plaintiffs have provided no evidence to the contrary.

[4]As was noted with respect to the defendants' statement, to the extent that the defendants have not responded to the plaintiffs' statement of material facts, pursuant to L.R. 56.1, those facts which are supported by the record will be deemed admitted. The court will not, however, repeat statements of fact which are duplicative of the defendants'.

mailbox at the intersection of the driveway and public roadway outside of the plaintiffs' gate at which the plaintiffs receive their mail.

In their first, and only federal, cause of action, the plaintiffs allege that they "were deprived of their rights, privileges and immunities secured by the Constitution of the United States and laws enacted under that Constitution, in that defendants' conduct constituted an arbitrary intrusion by defendants on the plaintiffs' property, deprived plaintiffs' (sic) of their peace and quiet, invaded plaintiffs' privacy and solitude, and diminished plaintiffs' enjoyment of life, which conduct was not authorized by law and which constituted a denial of plaintiffs' rights without due process of law."  Despite what appears to be a Fourteenth Amendment claim in their complaint, throughout the plaintiffs' briefs opposing both the defendants' initial motion to dismiss and now the defendants' motion for summary judgment, the plaintiffs' identify their claim as one pursuant to the Fourth Amendment.

With the above facts in mind, the defendants argue in their motion for summary judgment that the plaintiffs' Fourth Amendment rights were not violated when defendant Dunlap served Mrs. Stone with legal process on their property which had a closed and locked gate and was posted with "No Trespassing" signs. The court agrees.

Although the court has found no case on point in the Third Circuit, recently, the District of Oregon confronted a nearly identical issue in McAulay v. County of Washington, 2014 WL 4058962 (D.Ore., Aug. 15, 2014). The

facts of McAulay are that the plaintiffs are the owners of a ten-acre parcel of land located in Gaston, Oregon, a rural area of Washington County, where they live with their young daughter. The defendants are the Washington County Sheriff (Garrett) and two sheriff's deputies (Vargas and Weston).

On May 23, 2012, defendant Vargas was dispatched to the plaintiffs' home for the purposes of serving a civil summons upon Mr. McAulay. Defendant Weston provided backup and accompanied defendant Vargas to the property. Upon arrival, the front gate of the property was locked, blocking access to the road leading to the property. Further, a no trespassing sign was posted on the gate. The residence could not be seen from the gate. A phone call was made to the McAulays' residence to have someone meet the deputies at the gate, but there was no answer. Defendants Vargas and Weston proceeded to walk around the locked gate and down the driveway to the McAulays' residence, which was approximately 548 feet from the gate. The driveway led first to a detached garage and then to the residence. Defendants Vargas and Weston approached the residence from a path which went to the porch and, following the porch, went in front of the kitchen window and then to the front door.

Once on the porch, one of the deputies peered into the kitchen window upon passing and viewed Ms. McAulay, who had just come out of the shower and was standing naked in the kitchen drying her hair. The deputy proceeded to the front door. Prior to the deputy reaching the front door, Mr. McAulay

opened the door and exited the house. At that time, Mr. McAulay was provided with the deputy sheriffs' business cards, he was served with the summons, and the deputies left the proper without further incident.

The McAulays filed an action in the District of Oregon challenging the deputies' actions. In McAulay, the question before the court was whether it is a violation of the Fourth or Fourteenth[5] Amendment for sheriff's deputies, in a non-emergency situation, to ignore a "no trespassing" sign and gain entry onto a private property by walking around a locked gate for the purpose of serving a civil summons. The court in McAulay found that there was no Fourth Amendment violation committed. In so finding, the court stated:

> The Fourth Amendment provides, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV, § 1. "[T]he first Clause of the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures[6].'" Soldal v. Cook Cnty., Ill., 506 U.S. 56, 63 (1992), *quoting* United States v. Jacobsen, 466 U.S. 109, 113 (1984).
>
> \* \* \*
>
> "Trespass alone does not qualify [as a search, rather it] must be conjoined with . . . an attempt to find something or obtain

---

[5] As the court found in McAulay, because the plaintiffs' claim is covered by the more specific provisions of the Fourth Amendment, a substantive due process analysis under the Fourteenth Amendment would be inappropriate. City of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997)).

[6] Because the plaintiffs in McAulay had not claimed a seizure, that aspect of the Fourth Amendment claim was not discussed.

> information." <u>United States v. Jones</u>, 132 S.Ct. 945, 951 n. 5 (2012). Accordingly, "[w]hen 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" <u>United States v. Jardines</u>, 133 S.Ct. 1409, 1414 (2013) *quoting* <u>Jones</u>, 132 S.Ct. at 950-51. It follows, however, that a law enforcement officer has not conducted a search, for purposes of the Fourth Amendment, when he or she trespasses onto private property but does not attempt to obtain information therein. <u>See</u> <u>Jones</u>, 132 S.Ct. at 951; <u>Jardines</u>, 133 S.Ct. at 1414.

<u>Id.</u> at *4 (footnote omitted).

The court in <u>McAulay</u> reasoned that the sheriff's deputies had not violated the plaintiffs' Fourth Amendment rights. In doing so, the court noted the plaintiffs' concession that trespass is not sufficient grounds for establishing the existence of a Fourth Amendment search. While the deputies walked around the McAulay's locked gate and passed their no trespassing sign, they did not attempt to obtain any information while on the plaintiffs' property. In fact, the court noted that the deputies had all of the information they needed, i.e., Mr. McAulay's address, in order to perform the duty for which they had been dispatched, that being serving the civil summons. No other information was sought while on the McAulay's property. In fact, no lengthy discussions were had between Mr. McAulay and the deputies and, once the summons was served, the deputies promptly left. The court in <u>McAulay</u>, found that these actions do not constitute a search under the Fourth Amendment.

In the instant action, as in <u>McAulay</u>, there is no claim made by the

plaintiffs of a seizure by defendant Dunlap. Thus, the only issue is whether defendant Dunlap conducted an unreasonable search while on the plaintiffs' property. As in the McAulay case, there is no indication that defendant Dunlop attempted to obtain any information or find something when he entered on the property. In fact, the record demonstrates that after identifying Mrs. Stone, defendant Dunlap served her with the summons and immediately left the property. Whether or not defendant Dunlop trespassed on the plaintiffs' property, a search within the meaning of the Fourth Amendment did not occur. Therefore, there was no violation of the plaintiffs' Fourth Amendment rights. Given this, the court will grant the defendants' motion for summary judgment on the plaintiffs' Fourth Amendment claim.

As to the remaining state law claims, district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie–Mellon Univ. v. Cahill, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy,

convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)).

The plaintiffs' remaining claims relate to whether the defendants' actions were in violation of the Pennsylvania state constitution or state laws. Considerations of judicial economy, convenience and fairness to the parties do not provide a justification for this court to decide such matters. As such, the remaining state law claims will be dismissed without prejudice, subject to refiling in the state courts if the plaintiffs so desire.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  December 22, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1632-01.wpd